UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLINE WINDOWS INC. et. al.,<br><br>       Plaintiffs,<br><br>v.<br><br>QUANEX BUILDING PRODUCTS CORP. et al.,<br><br>       Defendant. | Case No.:  3:15-cv-01282<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [Doc. 7] AND PLAINTIFFS' MOTION TO STRIKE [Doc. 19]** |

Pending before the Court is Defendants'[1] Motion to Dismiss Plaintiffs'[2] first and fifth causes of action and Plaintiffs' Motion to Strike portions of Defendants' reply brief. The Court decides the matter on the papers submitted and without oral argument.  See Civ. L. R. 7.1(d.1).  For the reasons stated below, the Court **DENIES** both motions.

//

//

//

---

[1] The Defendants in this action are Quanex Building Products Corporation and Truseal Technologies, Inc.

[2] The Plaintiffs in this action are Starline Windows, Inc.; Starline Architectural Windows LTD.; and Vitrum Industries LTD.

1

## I. BACKGROUND

Plaintiffs are a group of companies engaged in the manufacture and distribution of window products. (FAC ¶ 13). Defendants are manufacturers of a particular kind of sealant known as polyisobutylene sealant ("PIB"). (Id.) Defendants sold their PIB product to Plaintiffs, who then used the PIB to make glass components known as Insulated Glass Units ("IGUs"). (Id. ¶ 13.)

IGUs are used in the construction of double- and triple-paned windows. The IGU itself consists of one or more panes of glass separated by one or more sealed airspaces created by the use of a spacer bar inserted between the panes of glass. Plaintiffs installed these IGUs in the construction of a number of residential properties. (FAC ¶ 21.) Subsequent to installation, the PIB "failed, deteriorated, and migrated, staining, saturating, obscuring, bonding to and/or otherwise damaging other components of the IGUs, windows, and/or window assemblies, including but not limited to glass, spacer bars, coatings, desiccant, glazing beads, and frames." (Id. ¶ 23.) As a result of this damage caused by the PIB, Plaintiffs have incurred liability to homeowners. (Id. ¶¶ 22, 24.)

On September 17, 2015, Plaintiffs filed a First Amended Complaint against Defendants alleging (1) strict products liability; (2) breach of contract; (3) breach of the implied warranty of merchantability; (4) breach of the implied warranty of fitness; (5) negligence; (6) violation of Business and Professions Code § 17200; (7) violation of Business and Professions Code § 17500; and (8) unjust enrichment. (See FAC.) Defendants now move to dismiss the strict products liability and negligence causes of action, arguing they are precluded by the economic loss rule. (See MTD.) Plaintiffs oppose, and move to strike portions of Defendants' reply brief. (See Opp'n [Doc. 15]; MTS [Doc. 19].)

//
//
//

## II. MOTION TO STRIKE

Plaintiffs contend the Court should strike a portion of Defendants' reply brief. Specifically, Plaintiffs argue that Defendants' reference to the *KB Home* factors is improper because their mention amounts to a new legal theory not raised in Quanex's Motion to Dismiss. (See MTS.) It is well established that a court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F. 3d 990, 997 (9th Cir. 2007). However, a court may consider arguments which, though not raised in the initial motion, are responsive to arguments made in an opposition brief. *See Koerner v. Grigas,* 328 F.3d 1039, 1048–49 (9th Cir. 2003).

Here, Plaintiffs' Opposition cites to *KB Home v. Superior Court* 112 Cal. App. 4th 1076 (2003), numerous times for the proposition that the economic loss rule does not preclude recovery in tort where the product at issue causes damage to a separate product. (See Opp'n 5, 8–9, 12.) In their reply, Defendants argue that the *KB Home* factor test for determining what the "product at issue" is supports a finding that the PIB sealant and the IGUs became one single "product" once the former component was incorporated into the latter. By arguing that the products are thus not "separate", Defendants are directly responding to Plaintiffs' argument that the economic loss rule should not preclude recovery where, as here, one "product" (the PIB) damages an allegedly separate product (the IGUs). Accordingly, the Court **DENIES** Plaintiffs' Motion to Strike.

//
//
//
//
//
//
//
//
//

### III. MOTION TO DISMISS

Defendants seek dismissal of Plaintiffs' strict products liability and negligence causes of action on the theory that the economic loss rule precludes any recovery in tort for economic damages stemming from a breach of contract.

### A. Legal Standard

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. *Id.* The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court has explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964–65 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

//
//
//
//
//

### B. Economic Loss Rule

The economic loss rule bars a plaintiff from recovering tort damages stemming from economic loss caused by a breach of contract. 6 Witkin, Summary 10th (2005) Torts, § 1514, p. 971. "Economic loss," in the products liability context, includes "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits. . . ." *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482 (2002) (internal citations and quotation marks omitted). However, economic loss does not include damages that one product causes to another product. *Id.* Thus, "the economic loss rule allows a plaintiff to recover. . . in tort. . . when a product defect causes damage to 'other property' that is, *property other than the product itself*." *Id.* at 483 (emphasis original).

Here, Plaintiffs allege that "[t]he PIB has failed, deteriorated, and migrated, staining, saturating, obscuring, bonding to, and/or otherwise damaging other components of the IGUs, windows, and/or window assemblies, including but not limited to glass, spacer bars, coatings, desiccant, glazing beads, and frames." (FAC ¶ 23.) Defendants contend that this damage allegedly caused by the PIB does not amount to damage to "property other than the product itself" because the applicable "product" for purposes of the economic loss rule is the IGU, not the PIB.[3] Thus, the dispositive question presented by this motion is whether the PIB lost its identity as an independent product upon its incorporation into the larger window assembly.

---

[3] Defendants argue under a separate heading that Plaintiffs' allegations that the PIB damaged property other than the product itself is a mere conclusion that fails to pass muster under the *Iqbal* / *Twombly* standard. (MTD 8:1–9:8; Reply 3:12–4:15.) The Court finds this argument unpersuasive because paragraphs 23, 33, and 60 are highly particularized in alleging that the PIB deteriorated and migrated thereby causing damage to other components of the IGUs such as the glass, spacer bars, coatings, desiccant, glazing beads, and frames when the PIB. Thus, the First Amended Complaint is not deficient for want of particularity regarding how the PIBs caused damage to "other property." Rather, the dispositive question is whether these other components qualify as products distinct from the PIB.

*KB Home* provides guidance on this question.  In *KB Home*, a stainless steel rod installed inside of furnaces for the purpose of limiting nitrous oxide emissions caused damage to other components of the furnaces.  The trial court reasoned that the NOx rods were not a product independent of the furnace and therefore dismissed the tort claims against the NOx rod manufacturer.  The California Court of Appeal reversed.  In doing so, the court reasoned that

> distinguishing between 'other property' and the defective product itself in a case involving component-to-component damage requires a determination whether the defective part is a sufficiently discrete element of the larger product that it is not reasonable to expect its failure invariably to damage other portions of the finished product. If that is the case, permitting tort recovery when the defective part causes physical injury to other components is consistent with the underlying principle recognizing a manufacturer's liability in tort by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm.

*KB Home*, 112 Cal. App. 4th at 1087.  The court recognized a non-exhaustive list of eight factors[4] relevant to this inquiry.  However, the Court declined to apply these factors at the motion to dismiss stage, reasoning that [r]esolution of this issue . . . should be left to the trier of fact."  *Id*. at 1087.

This Court agrees with the California Court of Appeal that the issue of whether a component part is distinct from the larger product is a fact intensive inquiry inappropriate for resolution on a motion to dismiss.  Thus, given the current absence of any factual record, this Court declines the invitation to apply the *KB Home* factors to determine

---

[4] (1) whether the component was integral to the function of the larger product; (2) whether the component has an independent use to the consumer; (3) whether there is a close relationship between the property damage and the inherent nature of the defect in the component; (4) whether the component itself or the larger product was placed into the stream of commerce; (5) whether the manufacturer of the defective component manufactured other parts of the larger product; (6) whether the larger product is sold in other markets without the component (7) whether the defective component can be readily removed from the larger product; and (8) whether the defective component can serve a function apart from its incorporation into the larger product.

whether "the [PIB] is a sufficiently discrete element of the [IGU] such that it is not reasonable to expect its failure invariably to damage other portions of the finished product." Accordingly, the Court **DENIES** Defendants' Motion to Dismiss.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Strike and Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Dated:  June 6, 2016

_____
Hon. M. James Lorenz
United States District Judge